# EXHIBIT A

SUMMONS IN A CIVIL ACTION   COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER
CLEVELAND, OHIO 44113

| CASE NO.<br>CV17881257 | D1 FX | SUMMONS NO.<br>32441226 |
|---|---|---|

Rule 4 (B) Ohio

Rules of Civil
Procedure

| NOEL A. CUMMINGS<br>VS<br>GREATER CLEVELAND REGIONAL TRANSIT<br>AUTHORITY, ET AL | PLAINTIFF<br><br>DEFENDANT |
|---|---|

RECEIVED

**SUMMONS**

2017 JUN -7 P 2: 47

RTA/LEGAL DEPT.

GREATER CLEVELAND REGIONAL TRANSIT
AUTHORITY
1240 WEST 6TH STREET
CLEVELAND OH 44113-0000

You have been named defendant in a sums
complaint (copy attached hereto) filed in Cuyahoga
County Court of Common Pleas, Cuyahoga County
Justice Center, Cleveland, Ohio 44113, by the
plaintiff named herein.

You are hereby summoned and required to answer
the complaint within 28 days after service of this
summons upon you, exclusive of the day of service.

**Said answer is required to be served on:**



Plaintiff's Attorney

SYLVESTER SUMMERS, JR JR
7804 LINWOOD AVENUE

CLEVELAND, OH 44103-0000

Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left.)

Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.

If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.

Case has been assigned to Judge:

STEVEN E GALL
Do not contact judge. Judge's name is given for
attorney's reference only.



**NAILAH K. BYRD**
Clerk of the Court of Common Pleas

| DATE SENT<br>Jun 6, 2017 |
|---|

By_____
Deputy



COMPLAINT FILED   06/05/2017

CMSN130

**EXHIBIT**
tabbies
**A**

**IN THE COURT ON COMMON PLEAS
CUYAHOGA COUNTY, OHIO
CIVIL DIVISION**

RECEIVED

2017 JUN -7 P 1: 21

RTA/LEGAL DEPT.

NOEL A. CUMMINGS                    )
2880 South Moreland Boulevard       )        CASE NO.
Cleveland, Ohio 44120,              )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )        Judge:  STEVEN E GALL
                                    )
GREATER CLEVELAND                   )             CV 17 881257
REGIONAL TRANSIT AUTHORITY          )
1240 West 6th Street                )
Cleveland, Ohio 44113,              )        COMPLAINT
                                    )
    and                             )        (Jury Trial Demanded)
                                    )
                                    )
MICHAEL C. YORK, individually       )
and in his official capacity as     )
Deputy General  Manager of          )
Operations,                         )
GREATER CLEVELAND                   )
REGIONAL TRANSIT AUTHORITY          )
1240 West 6th Street                )
Cleveland, Ohio , 44113,            )
                                    )
    and                             )
                                    )
JOSEPH CALABRESE, individually      )
and in his official capacity as     )
General  Manager and                )
Chief Executive Officer             )
GREATER CLEVELAND                   )
REGIONAL TRANSIT AUTHORITY          )
1240 West 6th Street                )
Cleveland, Ohio , 44113,            )
                                    )

and                                        )
                                           )
**SCOTT FERRARO, individually**            )
**and in his official capacity as**        )
**Director Of Labor and**                  )
**Employee Relations**                     )
**GREATER CLEVELAND**                       )
**REGIONAL TRANSIT AUTHORITY**              )
**1240 West 6th Street**                    )
**Cleveland, Ohio , 44113,**               )

      **Defendants.**

## NATURE OF THE COMPLAINT

1.    This is an action instituted, *inter alia,* under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1, *et seq.*, as amended, the Civil Rights Act of 1991, as amended, the Civil Rights Act of 1871, 42 U.S.C. § 1983 to vindicate state and federally protected rights against unlawful employment practices on the basis of sex and retaliation.

## JURISDICTION AND VENUE

2.    This action is authorized under Section 706(f) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-6(f) (2007 Supp.) ("Title VII"). The U.S. Equal Employment Opportunity Commission ("EEOC"), on or about March 6, 2017, entered a finding closing its file on the charge.  The EEOC issued a right-to-sue letter on March 6, 2017. (See, Copy of the EEOC Notice of Right To Sue, attached hereto as, **"Exhibit A"**). Plaintiff timely filed this complaint.

3.    Jurisdiction for federal claims under 42 U.S.C. § 1983 is asserted under 28 U.S.C. §§ 1343 (3) and (4) and jurisdiction is asserted likewise as to declaratory relief under 28 U.S.C. §§ 2202-2202.

4.      Jurisdiction is asserted for state claims under 28 U.S.C. § 1367.

5.      More than thirty (30) days prior to the institution of this lawsuit, Plaintiff filed charges with the EEOC alleging violations of Title VII by Defendants and regarding present and continuing claims under the Civil Rights Act of 1991. Jurisdiction of the District Court is invoked under 28 U.S.C. §§ 451, 1331, 1337, 134 3(3) and (4) and 1345 and jurisdiction is invoked under 28 U.S.C. § 1367.

6.      The unlawful employment practices alleged were and continue to be committed within the jurisdiction of the U.S. District for the Northern District of Ohio, Eastern Division, and the Common Pleas Court of Cuyahoga County, Ohio.

**PARTIES**

7.      Plaintiff Cummings is a U.S. citizen and she began service as a Senior Account Clerk. At all times relevant herein Plaintiff was a resident of Cuyahoga County and the State of Ohio, and Plaintiff was promoted to the position as a Service Quality Manager of Defendant Greater Cleveland Regional Transit Authority.

8.      Defendant, the Greater Cleveland Regional Transit Authority ("GCRTA"), is a political subdivision of the State of Ohio and an "employer" as defined by Title VII.

9.      At all times relevant times, Defendant GCRTA has been and is now an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e-1(b), (g) and (h).

10.     Defendant Michael C. York was at all relevant times and is the Deputy General Manager of Operations of Defendant GCRTA. Defendant York operated under color of law to deprive Plaintiff of equal employment opportunities on account of sex and to retaliate against Plaintiff, Defendant is an employer for purposes of §1983.

-3-

11.     Defendant Scott Ferraro was at all relevant times and is the Director of Labor and Employee Relations of Defendant GCRTA. Defendant Ferraro operated under color of law to deprive Plaintiff of equal employment opportunities on account of sex and to retaliate against Plaintiff, Defendant is an employer for purposes of §1983.

12.     Defendant Joseph Calabrese was at all relevant times and is the General Manager-Chief Executive Officer of Defendant GCRTA. Defendant Calabrese operated under color of law to deprive Plaintiff of equal employment opportunities on account of sex and to retaliate against Plaintiff, Defendant is an employer for purposes of §1983.

13.     At all relevant times, Defendants have been and are now employers engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title, 42 U.S.C. §2000e-1(b), (g), and (h).

## FACTUAL BACKGROUND

14.     In August of 1987, Plaintiff was hired by GCRTA as a Senior Account Clerk, and subsequently, Plaintiff was promoted to the title of Service Quality Manager.

15.     In January of 2015, Plaintiff was the claimant in a lawsuit against Defendant GCRTA for discrimination pending before the U.S. District in which Plaintiff was wrongfully placed on a crisis suspension by Plaintiff's supervisor Richard Newell ("Newell"), Director of Service Quality Management, for allegedly refusing training and refusing to sign a mandatory Employee Assistance Program ("EAP") referral.

16.     On February 2, 2015, despite agreeing to do any training requested or required and agreeing to participate in the EAP program, Plaintiff was wrongfully terminated by Defendant GCRTA.

-4-

17.     Acting under color of state law, Newell in his official position as the GCRTA Director of Service Quality Management and as supervisor to Plaintiff intervened and recommended to Defendants that she be fired without just cause under GCRTA written policies and procedures regarding progressive discipline.

18.     By allowing Plaintiff to be placed on crisis suspension and subsequently terminated, Defendant GCRTA subjected Plaintiff to the most stringent applications of discipline procedurally available at GCRTA under its written policies and procedures.

19.     In or around the first or second quarter of 2016, Plaintiff learned that subsequent to her termination from Defendant GCRTA in February of 2015, Newell was accused of initiating a physical confrontation with a fellow employee that constituted workplace violence under GCRTA disciplinary policies and procedures. Newell's conduct is clear grounds for automatic and immediate discharge pursuant to the GCRTA personnel policies.

20.     Defendants, individually and collectively, were aware that Newell had been accused of initiating a physical confrontation with a fellow employee that constituted workplace violence under GCRTA disciplinary policies and procedures. Such conduct be Newel is clear grounds for automatic and immediate discharge by GCRTA.

21.     Defendants, individually and collectively, were aware that Newell had been found to have been engaged in improper workplace violent behavior but not fired.

22.     Newell, however, was not approved for discharge by GCRTA management, including Defendants York, Ferraro and Calabese, but placed on a Decision Making Leave ("DML"), which is essentially a last chance agreement under

-5-

GCRTA policies and procedures.

23.     Newell subsequently violated the DML and his action created a second grounds for immediate termination by GCRTA and its senior management team; however, Newell was shown additional and significant leniency as a manager and spared termination by Defendants.

24.     Defendants senior management team, acting under color of state law and despite their awareness that non-female management employees engaged in more serious infractions are not terminated, approved of Newell's continued employment status a Director of Service Quality Management at GCRTA.

25.     Defendants were well aware that Newell, a male supervisor, was found to have engaged in workplace violence but not recommended  or approved for termination.

26.     Despite having a public criminal record of felony convictions, including gun violence, Newell was not automatically recommended and approved for termination by Defendants pursuant to disciplinary policies and procedures at GCRTA.

27.     Newell was not automatically discharged by GCRTA and he was afforded a less stringent application of disciplinary action than Plaintiff was although Newell had engaged in workplace violence that was significantly more egregious and violative of GCRTA policies and procedures regarding workplace conduct.

28.     Defendants York, Ferraro and Calebrese, acting under color of law, affirmed and ratified the lack of proper discipline that Newell was finally meted out.

29.     In October of 2016, Plaintiff filed an internal written employee complaint with Defendant Calabrese. In that complaint, Plaintiff alleged that current GCRTA

-6-

employees knowingly and deliberately violated the Ohio Revised Code and the GCRTA Employee Performance Code without any being subjected to any discipline or a full or complete investigation. (See, Copy Employee Complaint Letter dated October 29, 2016 from Noel A. Cummings to Joseph Calabrese. GCRTA General Manager-Chief Executive Officer, attached hereto as **"Exhibit B"**).

30.     All of the alleged infractions were significantly more egregious and severe than the infraction alleged against Plaintiff when she was wrongfully discharged by GCRTA.

31.     On or about February 17, 2017, Plaintiff filed a complaint with the EEOC, attached hereto as **"Exhibit C,"** for sex and retaliation. After that date, Defendant continued retaliation for Plaintiff's prior resistance to sex discrimination as well as her filing of the EEOC complaint with threat and implementation of further discipline.

### LEGAL CLAIMS

### Count 1

### Title VII Retaliation

32.     Plaintiff incorporates the previous allegations by reference.

33.     Defendant GCRTA's acts and conduct have been and continue to be intentional and wanton and reckless disregard of the rights and feelings of Plaintiff.

34.     As a direct and proximate result of Defendant's malicious, reckless, wanton, and bath-faith conduct, Plaintiff has suffered and continues to suffer economic and non-economic loss, reputational and extreme emotional distress, humiliation, anxiety, loss of esteem and self-worth as well as productivity in comparison to that

-7-

which she could have performed except for Defendant's' retaliation and discrimination on account of sex.

## Count 2

### Title VII Discharge

35.   Plaintiff incorporates the previous allegations by reference.

36.   Defendant GCRTA's acts and conduct has been and continue to be intentional and wanton and reckless disregard of the rights and feelings of Plaintiff.

37.   As a direct and proximate result of Defendant's malicious, reckless, wanton, and bath-faith conduct, Plaintiff has suffered and continues to suffer economic and non-economic loss, reputational and extreme emotional distress, humiliation, anxiety, loss of esteem and self-worth as well as productivity in comparison to that which she could have performed except for Defendant's' retaliation and discrimination on account of sex.

## Count 3

### Section 1983: 14th Amendment Equal Protection

38.   Plaintiff incorporates the previous allegations by reference.

39.   Defendants have denied and continue to deny Plaintiff the statutory right to enter into and maintain an employment contractual relationship with Defendant GCRTA free of discrimination and retaliation on the basis of her sex.

40.   Defendants purposely deprived Plaintiff equal-contract opportunities on the job on the basis of sex and retaliation.

41.    Defendants' acts have been and continue to be intentional, retaliatory, and in wanton and reckless disregard of Plaintiff's rights and feelings.

42.    As a direct and proximate result of Defendants' malicious, reckless, wanton, and bath-faith conduct, Plaintiff has suffered and continues to suffer economic and non-economic loss, reputational and extreme emotional distress, humiliation, anxiety, loss of esteem and self-worth as well as productivity in comparison to that which she could have performed except for Defendant's retaliation and discrimination on account of sex and race.

### Count 4

### Section 1983: First Amendment Retaliation

43.    Plaintiff incorporates the previous allegations by reference.

44.    Plaintiff's actions, including her vocal and written opposition to Defendants' actions in support of the unfair and uneven disciplinary actions against GCRTA employees, as described in this complaint, constitutes protected free speech under the United States Constitution.

45.    Defendants' treatment of Plaintiff as described in this complaint was taken under the color of law by Defendants and in retaliation for Plaintiff's exercise of her rights to free speech to speak out against discrimination by Defendants on the basis of sex.

46.    Defendants' treatment of Plaintiff, as described in this complaint, were violations of Plaintiff's clearly established right to freedom of speech, protected by the First Amendment to the United States Constitution, for which Defendants are liable

under 42 U.S.C. § 1983.

47.     Defendants' acts have been and continued to be intentional, retaliatory, and in wanton and reckless disregard of Plaintiff's rights and feelings.

48.     As a direct and proximate result of Defendants' malicious, reckless, wanton, and bath-faith conduct, Plaintiff has suffered and continues to suffer economic and non-economic loss, reputational and extreme emotional distress, humiliation, anxiety, loss of esteem and self-worth as well as productivity in comparison to that which she could have performed except for Defendants' retaliation and discrimination on account of sex.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests the Court to grant the following relief:

A.     Declare that the acts of defendants constitute violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., the Civil Rights Act of 1871, 42 U.S.C. § 1983, the First and Fourteenth Amendments.

B.     Grant permanent injunction enjoining defendants, their officers, agents, employee, successors, assigns, and all persons in active concert of participation with it, from engaging in any employment practices, that discriminate on the basis of sex, and further enjoin any acts or conduct that has the purpose or effect of retaliating against Plaintiff for asserting rights against discrimination and retaliation based upon sex;

C.     Order defendants to institute and to otherwise carry out policies; practices, and programs that provide equal-employment opportunities for both male and female, and other employees, and that eradicate the effects of its past and present unlawful employment practices;

-10-

D.   Order defendants to reinstate Plaintiff and to make Plaintiff whole by providing appropriate back pay with prejudgment interest and for other affirmative relief necessary to eradicate the effects of their unlawful employment practices;

E.   Grant to Plaintiff appropriate compensatory, actual, exemplary, consequential, incidental, reliance, expectation, and punitive damages, and interest;

F.   Award Plaintiff costs in this action including statutory reasonable attorney fees and costs as provided by statute;

G.   Grant such further relief as this Court deems necessary and proper and in the public interest

## JURY DEMAND

Plaintiff demands a trial by jury on all issues within this complaint.

Respectfully submitted,

Sylvester Summers, Jr., Esq. (0042482)
Sylvester Summers, Jr., Co., LPA
Lexington Village
7804 Linwood Avenue
Cleveland, Ohio 44114
(216) 470-6773 (Cell)

Attorney for the Plaintiff
Noel A. Cummings

-11-

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Noel Cummings<br>2880 S. Moreland Blvd<br>Cleveland, OH 44120 | From: | Cleveland Field Office<br>EEOC, AJC Fed Bldg<br>1240 E 9th St, Ste 3001<br>Cleveland, OH 44199 |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 532-2017-00436 | Elmeaco J. Mallory,<br>Investigator | (216) 522-7657 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

|   |   |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [X] | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Cheryl Mabry,_
**Cheryl Mabry,**
**Director**

MAR 0 6 2017

(Date Mailed)

Enclosures(s)

cc:
Sheryl K. Benford
GEN COUNSEL
GR CLEV RTA
1240 W 6TH ST
Cleveland, OH 44113

**PLAINTIFF'S COMPLAINT**
**EXHIBIT "A"**

*Noel A. Cummings*
*2880 S. Moreland Blvd. Apt. 405*
*Cleveland, OH  44120*

PLAINTIFF'S COMPLAINT
EXHIBIT "B"

October 29, 2016

Mr. Joseph Calabrese
General Manager-Chief Executive Officer
The Greater Cleveland Regional Transit Authority
1240 West 6th Street.
Cleveland, OH  44113

**RE:  Employee Complaint: Executive Malfeasance and Fraud**

Mr. Calabrese:

I am filing this complaint to notify, as well as, advise you of not only an egregious and flagrant violation of the Employee Performance Code, but a deliberate violation of the Ohio Revised Code (ORC) as well, by members of the Executive Management Team and staff.  My hope is that you will recognize and honor your obligations as Chief Executive Officer, beyond your fiduciary and stewardship responsibilities for the operations of the GCRTA, and act expeditiously to redress the allegations herein presented and otherwise extend yourself and your authority to see that this matter is properly addressed and that the proper and appropriate corrective actions are taken.

Please be advised that the following executives, Ms. Sheryl King-Benford, Deputy General Manager-Legal Affairs/General Counsel, Mr. Bruce Hampton, Deputy General Manager-Human Resources and staffperson, Ms. Kathleen Minahan, Deputy General Counsel-Legal Affairs have violated the Employee Performance Code, Rule 1:  Duty to Perform Our Jobs, as well as, the ORC through their direct involvement and participation in an act of fraud, which has caused me irreparable harm professionally, and immeasurable emotional stress and financial detriment personally.  The nature and specifics of their performance infraction and legal malfeasance, are associated with the settlement proceedings initiated by the Honorable Judge James Gwin of the U.S. District Court for the Northern District of Ohio to resolve an action for discrimination then before the court, which had been filed on my behalf.  The agreement that was reached as a result of those proceedings has since been determined to contain provisions that are in violation of the ORC.  However, the reality is that the aforementioned individuals knew that certain of the provisions determined to be non-compliant with the ORC, would be non-compliant before the settlement proceedings even began and certainly before the settlement offer was made.  The essential facts of the matter are as follows:

1.  On November 7, 2014, Ms. Minahan, ostensibly engaged in exploring a potential settlement stragegy for the aforementioned discrimination lawsuit, composed and transmitted an email  to my then counsel, Mr. David Harvey of Harvey Abens Iosue, LPA Inc. (HAI).  The subject of the email was "More Obstacles -- but a potentially good solution."  In that communication, on which she blind copied, her supervisor, Ms. King-Benford and Mr. Bruce Hampton, Ms. Minahan advised Mr. Harvey that a specific

strategy under consideration, which apparently included my retirement, was not possible. She writes: "Dave, I spent quite a bit of time this morning pouring over OPERS [Ohio Public Employees Retirement System] stuff. I think we're not able to pay Noel to stay home. Here's why. Service credit requires earnable salary. Earnable salary, however, does not include 'anything of value received by the contributor that is based on or attributable to retirement or an agreement to retire.'" (See Exhibit 1). In that statement, the language that Ms. Minahan quotes is from the ORC, Section 145.01(R). More importantly, here Ms. Minahan specifically attests that she had peformed some level of research of OPERS information and that it is her understanding, of what turns out to be the ORC, that paying me to stay home, within the context of a settlement strategy, would not be possible and would not yield earnable salary/service credit towards my retirement. She is clear and unambiguous.

Additionally, Ms. Minahan goes on to articulate "another solution" which would require that I exhaust my accrued benefits i.e., sick time and vacation etc., to receive approximately one year of service credit; then obtain other OPERS qulifying work to earn what would have been my 30th year of service credit (See Exhibit 1, bullet 3). Ultimately, this other "solution" proved to be non-compliant with the ORC as well. However, what this communication does make clear is that identifying a methodology which would get me to retirement was a focus of the settlement strategies under consideration as early as November 2014. It is also clear and undeniable from this email that Ms. Minahan, as well as, Ms. King-Benford and Mr. Hampton were all well aware that paying me to stay home as a means to receiving earnable salary for service credit as a strategy, was inconsistent with, or otherwise prohibited by the ORC.

**Note:** This email was obtained from David Harvey of HAI, who made it available in response to a discovery request. It is noteworthy that Mr. Harvey, a party external to the GCRTA, has a copy of an internal version of an email that reveals the persons to whom it was blind copied internally. The whole purpose of blind copying is to prevent the addressee from knowing the others with whom the sender is sharing the content of the email. In the normal course of business, Mr. Harvey would not, and arguably should not, have had this copy of this document, only the version directly transmitted to him as the addressee. This version of the email, which included the the blind copies, had to have been given to him by an employee who had access to it, notably, Ms. Minahan, Ms. King-Benford or Mr. Hampton. This is important as it demonstrates some meaningful level of complicity. There is ostensibly no justifiable reason why Mr. Harvey would need to know who was blind copied internally. It is also noteworthy that in response to a Freedom of Information request made by my current counsel, Mr. Lawrence Mays, for all written communications between Ms. Minahan and Mr. Harvey for a period that included November 2014, no version of this email was provided at all.

2. On January 22, 2015, I was wrongfully placed on a crisis suspension allegedly for refusing training and refusing to sign a mandatory Employee Assisance Program (EAP) referral. I believed the mandatory referral to be a misapplication of the GCRTA policies and guidelines and further believed that the language and implication of the referral compromised my emotional integrity and refused to sign it and requested time to have my attorney review it. I was denied and suspended. I was subsequently wrongfully terminated on Monday, February 2, 2015, despite agreeing to do any training required, as well as, seeing any therapist required by the GCRTA, in addition to the therapist I

2

was then seeing of my own volition.  At that time, I had approximately 27.5 years of service credit through my employment with GCRTA and approximately .7 years service credit with the State Teachers Retirement System (STRS) for a total of approximately 28.2 years serivce credit with the State of Ohio.  As indicated by Ms. Minahan in her email, I would need approximately two years to retire.

3.  On February 4, 2015, there was a Case Management Conference on the discrimination case (Civil Action No. 1:14CV1729), with the the Honorable Judge Gwin.  I was being represented by attorneys Mr. David Harvey and Mr. Matthew Abens of HAI and present for the Defense was Ms. Minahan, Ms. King-Benford, Mr. Hampton, Mr. Michael York, Deputy General Manager-Operations and Ms. Felicia Brooks-Williams, Manager-Office of Equal Opportunity.  After noting that I had been terminated the Monday prior, Judge Gwin turned the case management conference into a mediation in an effort to settle the case.  In light of the termination, the major demand and objective of the mediation/ settlement proceeding was that I be able to reach retirement, in exchange for which, I would dismiss the pending lawsuit for descrimination and forgo the opportunity to amend the motion for discrimination to include retaliation for the wrongful suspension and termination, or pursue the causes for retaliation through a wholly separate legal action.

It was during this mediation, that Ms. Minahan, Ms. King-Benford and Mr. Hampton, as parties for the Defense, either proposed or were parties to the proposal, which included provisions that would require me to exhaust the entirety of my accrued benefits (sick, vacation, and personal), as well as, serve two, six-month suspensions for which my salary would be approximately $600/mo. (the minimum earnable salary required for a month of service credit under OPERS).  These terms, offered on February 4, 2015 and purported to create two years earnable salary for service credit, are essentially the terms of Minahan's "potentially good solution" outlined in her November 7, 2014 email with one major exception.  Under the "good solution", after exhausting my benefits, I would have been required to resign and find other OPERS qualifying employment to earn my 30th year of service credit (See Exhibit 1, bullet 4).  This is important because here Ms. Minahan demonstrates a working knowledge of the prohibitive implications of ORC, Section 145.01(R), which she quoted in the opening paragraph.  This means that when she, Ms. King-Benford, and Mr. Hampton, tendered the offer, or were parties thereto, on February 4, 2015, they were all aware that was in violation of the ORC; that the two, six-month suspensions, effecting a year for which I would be paid to stay stay home, would not create the year of earnable salary/service credit.  Yet they tendered the offer anyhow.  By crafting or otherwise being parties to this offer with essentially illegal terms, Ms. Minahan, Ms. King-Benford and Mr. Hampton intentionally and deliberately violated the ORC and GCRTA Employee Performance Code, as they not only failed to act in the best interest of the GCRTA, which was their obligation, but they failed to act ethically or within the confines of the law.

The fact is Ms. Minahan, Ms. King-Benford and Mr.Hampton are all officers of the court, licensed to practice law by, and in, the State of Ohio, yet they knowingly tendered an offer before a federal court which they knew, or should have known, contained illegal provisions.  By tendering this offer and allwoing me to I rely on the illegal representation, that I would be paid, "...the minimum amount required to get her [me] to earning service credit..." and therefore attain "30 years of PERS." so that I would be induced into accepting the settlement, Ms. Minahan, Ms. King-Benford and Mr. Hampton were in effect, co-conspirators in the perpetration of an act of fraud, specifically, fraud in the

inducement (See Exhibit 2, Trascript of Proceedings).  Unaware of the illegitimate aspects of the offer and relying on the representations of Minahan, King-Benford and Hampton for the Defense, I accepted the terms of the settlement in good faith and entered into the agreement, which was subsequently memorialized and signed on February 24, 2015.  It is clear and undeniable that Ms. Minahan, Ms. King-Benford and Mr. Hampton through the illegitimate offer tendered, were parties to the fraudulent inducement upon which I accepted the terms of an offer that are unenforceable under the ORC and therefore to my detriment.

4.  From or about February 2015 through June 2016, the Payroll Section of the Accounting Department, as directed by personnel in the Human Resources Division, made payments to me which effected the exhaustion of all of my accrued benefits (sick time, vacation and personal time); additionally, payments were made for the first six-month suspension period in the approximate amount of $600/month, specifically $300/bi-weekly in accordance with the payroll schedule.  It is worthy of note that with respect to the suspension payments, the pay advices contained no indications for audit purposes or otherwise, that the pay was indeed suspension pay, i.e., pay for which I had not worked or even swiped the time clock.  The pay advices only show 80 hours, salary labor, which incorrect and would be misleading should an audit be performed.

All of the payments made during this time frame, contained deductions for OPERS contributions, which is the normal practice.  In fact, over the course of my 27.5 years of service with the GCRTA, I cannot recall a time when I was paid for vacation or sick time and OPERS contributions were not withheld.  Occasions whereupon OPERS deductions are not withheld are the execption and not the rule.  Absent specific instructions to the contrary, Payroll will withhold and remit OPERS deductions.  Clearly no such instructions were provided to the Payroll staff.  Additionally, as the payments were being made, OPERS was not notified that they were not earnable salary and ineligible for service credit.

This proves that the payments were intended to be earnable salary for which I would receive service credit.  In his Opinion & Order issued September 28, 2016, the Honorable Judge Gwin states that I made a unilaterial mistake in entering the agreement and mistakenly believed that the monthly payments made to me would be earnable salay (See Exhibit 3).  These payments, specifically in light of the OPERS withholdings and subsequent reporting and remittances to OPERS, prove that there was no unilateral mistake on my part in the understanding the payments to be earnable salary, but fraud on the part of the GCRTA through its aformentioned representatives.  Ms. Minahan's November 7, 2014 email proves that she and at least Ms. King-Benford and Mr. Hampton knew that the payments were not earnable salary; however, they kept that information to themselves.  In fact, Ms. Minahan's email is the only document of which I am aware, outside of OPERS notices, that suggests or indicates that the payments were not earnable salary, and only she, Ms. King-Benford, Mr. Hampton and Mr. Harvey were privy to it. The other relevant documents i.e., the Transcript of Proceedings and the settlement agreement both suggest that earnble salary would be available.

Furthermore, even if Ms. Minahan, Ms. King-Benford and Mr. Hampton argue that they did not know or were not certain that the paymemts were not earnable salary, according to Ohio Administrative Code 145-1-26(l)(1), it is the public employer's responsibility to

request a determination as to whether compensation is earnable salary or not before remitting deductions to OPERS.  According to OPERS, no such request was made by any official of the GCRTA.  Furthermore, as Judge Gwin's Opinion & Order so aptly reminded me, I hasten to remid you, ignorance of the law is no defense.

The fact is the payments were made; OPERS deductions were withheld and remitted as earnable salary; service credit was accrued and this practice continued even past the OPERS determination and notification.  These occurrences were all the responsibility of the GCRTA discharged through the auspices and oversight of Mr. Hampton, who was aware of ORC, Section 145.01(R), the settlement agreement and he was present at the settlement proceedings.  Neither he, Ms. Minahan or Ms. King-Benford can extricate themselves from the malfeasance at this point.

5. In August 2016, OPERS issued its determination on the terms of the settlement agreement pursuant to a review it performed at my and my legal cousel's request.  In short, the terms of the agreement do not yield earnable salary.  In a letter to GCRTA's Payroll Supervisor Mary Willoughby, dated August 23, 2016, Molly Bland, Employer Compliance Specialist with OPERS writes: "The prospective nature of this settlement does not comply with the Ohio Administrative Code 145-1-26 referenced above and is determined not earnable salary.  Per Ohio Revised Code Section 145.01(R)(2)(h), anything of value received by the contributor that is based on or attributable to retirement or an agreement to retire is not earnable salary.  The payment terms of the settlement agreement are based on the condition to retire at Ms. Cummings's earliest eligibility and are therefore not earnable salary.  Furthermore, ORC 145.01(R)(2)(e) provides that earnable salary does not include payments for accrued personal leave, sick leave, or vacation that are made at any other time than in the year in which the personal leave, sick leave, or vacation was accrued." (See Exhibit 4).  The language cited from the ORC contains the exact language quoted by Ms. Minahan in her November 7, 2014 email.  Again, she was well aware of the law and that the settlement offer and agreement of February 4, 2015 was in violation therewith.  The OPERS determination on earnable salary is final and not appealable (See Exhibit 5:  Letter from OPERS to K. Minahan, dated August 19, 2016).

Also on August 23, 2016, Ms. Bland notified me that my account had been adjusted for the unauthorized contributions made since February 2, 2015 (See Exhibit 6).  The unauthorized contributions had been returned to the GCRTA (an subsequently from the GCRTA to me) and my service credit total had been reduced by 1.375 years, which returned my balance to the approximate 27.5 years of service credit that I had before the settlement agreement was reached.

6. Despite the OPERS determination and notifications, the GCRTA continues to make payments to effect the second six-month suspension.  On August 27, 2016, a check was issued to me in the amount of $370.88.  It was a check for retroactive pay to cover the July and August 2016 suspension payments that had not been made and therefore placed the GCRTA in breach of the settlement agreement.  This payment, as well as, the payments through September 16, 2016, included OPERS withholdings despite the OPERS notification.  On September 24, 2016, I received a check for $180.00 for which no explanation was provided; however, I reasoned that it was a refund of the OPERS withholdings for all the suspension payments made since, and including, August 27, 2016.  As of Sepember 30, 2016, the payments made do not include the withholdings.

5

This is very troubling to me as it is an indication that despite the OPERS determination that the payments made per the settlement agreement are non-compliant and in violation of the ORC, thereby making the agreement unenforceable under Ohio's state law, the decision has been made by either the Legal Affairs or Human Resources Divisions or both, to make the payments anyhow in an obvious attempt to circumvent the ORC and fully execute this agreement. Judge Gwin's refusal to vacate the settlement notwithstanding, the terms of the settlement agreement are not enforceable under the Ohio Revised Code, which has precedence despite the agreement being reached through a federal court proceeding.

7. In light of my belief that I have been the victim of fraud, in that the settlement agreement is non-compliant with the ORC and the parties responsible for the settlement offer were aware of the legal conflict prior to, and certainly upon tendering the offer, I consider the legitimacy of the payments to be in dispute and the provisions of settlement agreement associated therewith unenforceable.

I have not deposited or otherwise cashed any checks made to me since receiving the OPERS determination. Furthermore, I am returning all checks remitted to me to your attention for proper disposal or other handling, including the checks that represent refunds of the OPERS withholdings (Enclosed). Additionally, please find enclosed a personal check to the GCRTA in the amount of $239.64, which is the refund of a payment that was transmitted via direct deposit before my request to cancel the service was honored (See check advice #80547088).

Finally, please be advised that in July 2016, before the OPERS determination but upon our suspicion that there was some level of fraud associated with the payments available per the settlement agreement, my legal counsel reached out to Ms. Minahan and tendered a return of the other payments and she refused the offer.

Mr. Calabrese, I hope it is clear to you from the facts presented and the documents provided that Ms. Minahan, Ms. King-Benford and Mr. Hampton have not only violated the Performance Code, but moreover the law. Such malfeasance, at the executive level no less, is not only unacceptable and unethichal, but represents a breach of the public trust that can neither be ignored nor go without retribution. Through the direct efforts and actions of these people, not only have I been harmed immeasurably and caused to suffer irreparable emotional stress and financial detriment, the GCRTA has been rendered a disservice and exposed to unnecessary legal liability. I therefore and herewith request that Kathleen Minahan, Sheryl King-Benford and Bruce Hampton be removed from service immediately pending whatever additional investigation and/or due process proceedings deemed necessary subsequent to their final discharge.

Let me say that this has been a very protracted and challenging set of circumstances with which I have been consumed and required to contend, detangle, discern and endure; and unfortunately, it is not over yet. This matter has indeed proven to be the professional challenge of my life. However, I remain resolute and undaunted because I know that I have done nothing wrong. I do not deserve the malice aforethought and callous disregard with which I have been handled simply because I exercised my right to seek fair treatment and an equal opportunity to advance in my career. I am determined to see this matter and the plethora of issues that attend it, effectively and legitimately redressed and resolved.

6

Although in exile, I am still an employee and I bring this complaint to your attention not only for myself, but for the GCRTA as a whole, whose employees deserve better stewardship, as well as, honorable and ethical treatment.

You may choose to ignore me at this juncture as you have in the past; it is your prerogative and choice.  However, make no mistake, your response to this complaint given the severity of the allegations made and proved, will be a telling assessment and measure of the quality and sufficiency of your leadership, judgment and integrity, and the due processional care with which you dishcarge your reponsibilities as you serve this organization and its employees.  The nature of issues I have raised have as much to do with justice and fair play as anything, and what they reveal to me is an organization whose culture is eroded and in decline due to the tolerance and normalization of mismanagement and the pervasive lack of accountablility precedent thereto.  How you respond will only clarify whether you are more a part of the problem or not.

In light of how I have been dealt with thus far, I am doubtful that this matter and those related to it will not lead to further litigation.  However, please know that I am willing and amenable to seeking resolution otherwise.  I am open to the discussion.  If you have comments or need additional information, or would like to meet with me, please arrange it through my legal counsel, Mr. Lawrence Mays, Esq. at (216) 239-1400, as the terms of the settlement agreement do not permit me on GCRTA property beyond locations accessible to the public.

Very Truly,

Noel A. Cummings
Employee-In-Exile

Exhibits 1-6
Enclosures

7

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 532-2017-00436 |

| **Ohio Civil Rights Commission** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Noel Cummings** | **(216) 269-8343** | **1963** |

| Street Address | City, State and ZIP Code |
|---|---|
| **2880s. Moreland Blvd, Cleveland, OH 44120** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **GREATER CLEVELAND RTA** | **500 or More** | **(216) 781-4522** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1240 W 6TH ST,  Cleveland, OH 44113** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

RECEIVED
FEB 10 2017
EEOC-CLFO

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

| Earliest | Latest |
|---|---|
| **02-15-2015** | **01-18-2017** |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

1.      I was hired by the Respondent in August of 1987 as a Senior Account Clerk.  My current title is Service Quality Manager.  I assert that in January of 2015, at which time I was the plaintiff in a lawsuit against the Respondent for discrimination pending before the U.S. District Court, I was wrongfully placed on a crisis suspension by my supervisor, Mr. Richard Newell, Director of Service Quality Management, for allegedly refusing training and refusing to sign a mandatory Employee Assistance Program (EAP) referral.  Subsequently, on Monday, February 2, 2015, despite agreeing to do any training requested or required and agreeing to participate in the EAP program, I was wrongfully terminated by Mr. Newell.  By allowing me to be placed me on a crisis suspension and subsequently terminated, the Respondent subjected me to the most stringent applications of discipline procedurally available.

2.      In or around the first or second quarter of 2016, I learned that subsequent to my termination in February of 2015, Mr. Newell was accused of initiating a physical confrontation with a fellow

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 2/8/17 *Date*     *Noel A. Cummings* *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

**PLAINTIFF'S COMPLAINT**
**EXHIBIT "C"**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 532-2017-00436 |

| **Ohio Civil Rights Commission** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

employee; and according to the disciplinary policies and procedures, workplace violence is grounds for automatic and immediate discharge. However, Mr. Newell was not discharged, but placed on a Decision Making Leave (DML), which is essentially a last change agreement. He subsequently violated the DML, creating a second grounds for termination; however, he was shown additional lenience and spared of termination. Despite having a record of felony convictions for acts of violence, including gun violence, of which the Respondent was aware of at the time, Mr. Newell was not discharged and was afforded a less stringent application of discipline than I was, despite his more egregious and severe infraction and subsequent violation.

3.      In October of 2016, I filed a written complaint with Mr. Joseph Calabrese, General Manager-Chief Executive Officer, against Ms. Kathleen Minahan, Deputy General Counsel-Legal, Ms. Sheryl King-Benford, Deputy General Manager-Legal Affairs, and Mr. Bruce Hampton, Deputy General Manager-Human Resources. In the complaint, I alleged that these employees, all being attorneys licensed by the State of Ohio, knowingly and deliberately violated the Ohio Revised Code (ORC) and the GCRTA Employee Performance Code when they tendered a settlement offer in U.S. District Court, the terms of which they knew or should have known, were in violation of the ORC. These employees have not been subjected to any discipline at all by the Respondent, despite their infractions being more egregious and severe than the infractions alleged against me.

I believe that I was disciplined, suspended and retaliated against based on my sex, female and gender non-conforming identity in violation of Title VII of the Civil Rights Act of 1964, as amended.



| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| *2/8/17* ___ *Nail A. Cummings* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Date*        *Charging Party Signature* | |