# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| NOEL A. CUMMINGS, | ) | CASE NO. 1:17-cv-1411 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | |
| GREATER CLEVELAND REGIONAL | ) | |
| TRANSIT AUTHORITY, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion to dismiss (Doc. No. 6 ["Mot."]) filed by Greater Cleveland Regional Transit Authority ("GCRTA"), Michael C. York, Joseph Calabrese and Scott Ferraro (collectively, "defendants"). Plaintiff Noel A. Cummings ("Cummings") filed a brief in opposition (Doc. No. 7 ["Opp'n"]), and defendants filed a reply (Doc. No. 9 ["Reply"]). For the reasons discussed herein, the motion is **granted**.

## I. BACKGROUND

On June 7, 2017, Cummings filed a complaint in the Cuyahoga County Court of Common Pleas, which defendants removed to this Court on July 5, 2017. (Doc. No. 1-2 ["Compl."].) Two days after removal, defendants sought to have the case transferred to Judge Gwin as being related to the termed case of *Cummings v. Greater Cleveland Regional Transit Authority, et al.*, Case No. 1:14-cv-1729 ("*Cummings 1*"). (*See* Doc. No. 5.[1])

---

[1] Under LR 3.1(b)(3), a case may be transferred to another district judge on the basis of relatedness, but the Court's practice is to make that transfer only if the first-filed case remains pending, which is not true in this case. LR 3.1(b)(4) also provides for transfer of cases that have been refiled after having been previously "discontinued, dismissed or remanded[,]" but that does not, strictly speaking, apply to this case, where the earlier case was "discontinued" and "dismissed" only because it settled. There is no need to transfer this case, since the Court may take judicial notice of its own records for purposes of resolving the instant motion to dismiss. *United States v. Doss*, 563 F.2d 265, 269 n. 2

On August 2, 2017, defendants moved to dismiss the case under Fed. R. Civ. P. 12(b)(6). Defendants assert that *Cummings 1* was settled among the parties and that the instant case raises employment-related claims that either were included within the contours of *Cummings 1* or should have been. Defendants claim that plaintiff is attempting to circumvent the settlement agreement in *Cummings 1* by raising claims herein that were explicitly released by the settlement agreement.

## II. DISCUSSION

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to

(6th Cir. 1977); *see also* Fed. R. Evid. 201(b)(2). Therefore, the Court **denies** the motion to transfer the case to Judge Gwin.

relief." *Id.* at 679. "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

In *Cummings 1*, plaintiff raised claims of gender discrimination, race discrimination, retaliation, violations of equal protection, and First Amendment retaliation, all arising out of her employment with GCRTA. On February 2, 2015, while *Cummings 1* was pending, plaintiff's employment with GCRTA was terminated for matters allegedly unrelated to the lawsuit. Although plaintiff would have had the opportunity to amend the *Cummings 1* complaint, she chose not to do so. Instead, on February 4, 2015, plaintiff appeared before Judge Gwin at a status conference, during which the parties reached a settlement. Although the docket in *Cummings 1* reflects that the parties encountered some difficulties memorializing and carrying out their agreement,[2] that case is now fully resolved, the Sixth Circuit having affirmed all of Judge Gwin's orders relating to the settlement. (*See* Doc. No. 76, Mandate.)

Notably, the settlement agreement in *Cummings 1* provided, in relevant part as follows:

> **Release.** Cummings, for herself, her heirs, representatives, assigns and agents, fully settles, releases and forever discharges GCRTA, its predecessors, successors, present and former officers, trustees, agents and employees from any and all claims, grievances, demands, liabilities, costs, damages, actions and causes of action, whether presently known or unknown, arising out of or related in any way to her employment with the GCRTA, including without limitation [this] Action, and any and all claims under the laws of contract or tort, including without limitation, the Age Discrimination in Employment Act of 1967, as amended (29 U.S.C. § 621 *et seq.*), including the Older Workers Benefits Protection Act of 1990; Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq.*), including the

---

[2] On August 5, 2016, eighteen months after the dismissal of the case as settled, Cummings filed a motion to review the settlement agreement, which was denied. (*See Cummings 1*, Doc. No. 59.) Two weeks later, Cummings moved to vacate the dismissal order and settlement agreement, and to reinstate the complaint. After briefing, that motion was also denied. (*Id.*, Doc. No. 64.) A month later, plaintiff moved for reconsideration and, at the same time, filed a notice of appeal. The motion for reconsideration was denied, as was a later supplemental motion for reconsideration. (*Id.*, Doc. Nos. 71, 73.) The appeal proceeded, and the Sixth Circuit affirmed the district court's judgment. (*Id.*, Doc. No. 76.)

Civil Rights Act of 1991 and the Civil Rights Acts of 1866, 1970 and 1871 (42 U.S.C. § 1981 *et seq.*); the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq.*); and the Rehabilitation Act of 1973; and any other federal, state or local statutory or common laws relating to employment discrimination or employment.

(*Cummings 1*, Doc. No. 55-2, ¶ 13.)

On June 7, 2017, Cummings filed in state court the instant lawsuit related to her former employment with GCRTA. Defendants timely removed the action. In the instant complaint, Cummings alleges that she was "wrongfully terminated by Defendant GCRTA[,]" after having been "wrongfully placed on a crisis suspension by [her] supervisor Richard Newell ('Newell'), Director of Service Quality Management, for allegedly refusing training and refusing to sign a mandatory Employee Assistance Program ('EAP') referral." (Compl. ¶¶ 15, 16.) She further alleges that, "subsequent to her termination from Defendant GCRTA in February of 2015, Newell was accused of initiating a physical confrontation with a fellow employee that constituted workplace violence under GCRTA disciplinary policies and procedures." (*Id.* ¶ 19.) Although this was "clear grounds for automatic and immediate discharge pursuant to the GCRTA personnel policies[,]" (*Id.*), Newell "was not approved for discharge by GCRTA management, . . . but placed on a Decision Making Leave ('DML'), which is essentially a last chance agreement under GCRTA policies and procedures." (*Id.* ¶ 22.) After Newell "subsequently violated the DML[,]" (*Id.* ¶ 23), he was once again "shown additional and significant leniency as a manager and spared termination by Defendants." (*Id.*) Finally, Cummings alleges that "[a]ll of the alleged infractions [by Newell] were significantly more egregious and severe than the infraction alleged against Plaintiff when she was wrongfully discharged by GCRTA." (*Id.* ¶ 30.)[3]

---

[3] Attached to the complaint is a charge of discrimination filed by Cummings with the Ohio Civil Rights Commission ("OCRC") on February 10, 2017. (*See* Doc. No. 1-2, Compl. Ex. C.) Therein, she asserts that she was subjected to more stringent discipline than Newell and was later terminated, whereas Newell was not terminated. She claims, with reference to a letter dated October 29, 2016, that she wrote to GCRTA (twenty months after her termination of

4

Defendants argue in their motion to dismiss that all of the claims in plaintiff's current lawsuit are barred by the doctrine of *res judicata*. Under federal law, *res judicata* applies if (1) there was a decision on the merits by a court of competent jurisdiction in the first action; (2) the second action involves the same parties or their privies; (3) the second action raises an issue actually litigated or that should have been litigated in the first action; and (4) there is identity of claims. *Walker v. Gen. Tel. Co.*, 25 F. App'x 332, 336 (6th Cir. 2001) (per curiam) (citation omitted). All four of these elements are met here.

The gravamen of the instant complaint is that plaintiff was wrongfully discharged from her employment for various discriminatory reasons, including being treated differently than other employees of GCRTA, in particular another employee who was disciplined *after* her termination and the settlement agreement. This is not a new claim; it is the same wrongful termination claim supported by allegedly newly-discovered information. But, by way of the settlement, Cummings agreed to forego pursuance of her claims and the right to support them by proof, even as-yet undiscovered claims or proof. This action is simply *another* of many unsuccessful attempts by Cummings to undo her settlement agreement, under which she agreed to release defendants "from any and all claims . . . actions and causes of action, whether presently known or unknown, arising out of or related in any way to her employment with the GCRTA[.]" (*Cummings I*, Doc. No. 55-2 ¶ 13.) Cummings will not be permitted to pursue this lawsuit in the face of a settlement agreement that precludes it.

---

employment) that GCRTA officials "tendered a settlement offer in U.S. District Court, the terms of which they knew or should have known, were in violation of the [Ohio Revised Code]." (*See* Doc. No. 1-2, Compl. Ex. B.) She received a right to sue letter. (*See* Doc. No. 1-2, Compl. Ex. A.) This charge of discrimination was a blatant and misguided attempt to resurrect an old (settled) claim and to somehow revive the expired statute of limitations. This effort cannot be allowed to succeed. In any event, plaintiff cannot explain how her newly-discovered information about Newell would create a new cause of action. Even if her allegations are true, she suffered no adverse employment action, since she was no longer employed by GCRTA at the time Newell was allegedly given some sort of preferential treatment.

### III. CONCLUSION

For the reasons set forth herein, as well as those set forth in defendants' memorandum and reply in support of their motion to dismiss, defendants' motion to dismiss (Doc. No. 6) is **granted**.

**IT IS SO ORDERED**.

Dated: January 17, 2018

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**